## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CESAR RIOS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0061-CVE-CDL** |
| | ) | |
| **JIMMY MARTIN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by petitioner Cesar

Rios, a state inmate appearing pro se. Rios seeks federal habeas relief, under 28 U.S.C. § 2254, from

the judgment entered against him in the District Court of Nowata County, Case No. CF-2015-70.

He attacks that judgment on two grounds, claiming (1) that he was convicted on the basis of a guilty

plea that was not knowing and voluntary, in violation of his Fourteenth Amendment right to due

process, and (2) that he was denied his Sixth Amendment right to the effective assistance of counsel

at the hearing on his motion to withdraw his plea. For the reasons stated below, the Court finds that

Rios has not shown that he is in state custody in violation of the Constitution or other federal law.

The Court therefore denies the petition.

### I.    Background

#### A.    Guilty plea and sentencing

In 2016, the State of Oklahoma ("the state") filed a second amended information charging

Rios and two co-defendants with six felony offenses:  shooting with intent to kill, in violation of

OKLA. STAT. tit. 21, § 652(A) (counts one, two and three), using a vehicle in discharging a weapon,

in violation of OKLA. STAT. tit. § 652(B) (count four), possessing a firearm during commission of

a felony, in violation of OKLA. STAT. tit. § 1287 (count five), and causing great bodily injury while eluding or attempting to elude a police officer, in violation of OKLA. STAT. tit. § 540A(C) (count six). Dkt. # 8-1, Original Record ("O.R.") vol. 1, at 47-48.[1] Rios was formally arraigned on April 4, 2016, and his case was set for a jury trial. Dkt. # 8-1, O.R. vol. 1, at 50.  The case ultimately proceed to trial on November 14, 2016.  Dkt. # 8-1, O.R. vol. 1, at 146.

At the beginning of the trial, Rios, who was represented by Daniel Giraldi ("plea counsel"), waived his right to a jury trial and entered a blind plea of guilty as to all six counts. Dkt. # 8-1, O.R. vol. 1, at 146, 148 (written waiver form), 174-87 (written plea form); Dkt. # 8-3, Tr. Plea Hr'g, at 1-3.  Before accepting Rios's plea, the trial court conducted a plea colloquy with Rios.  Under oath and in open court, Rios told the trial court that he completed "plea paperwork" with plea counsel and that the answers therein were Rios's answers. Dkt. # 8-3, Tr. Plea Hr'g, at 3.  The trial court identified the charges against Rios, asked he if understood those charges and asked if he understood that some of the offenses were "85 percent crimes." Dkt. # 8-3, Tr. Plea Hr'g, at 4.  Rios stated that he understood the charges and that some were 85 percent crimes.  Dkt. # 8-3, Tr. Plea H'rg, at 4. The trial court then stated, "Okay.  So Counts 1 through 4 are all 85 percent.  And the range of punishment is 0 to life and/or 2 to life or 2 to 10 and 1 to 5.  You understand these range of punishments." Dkt. # 8-3, Tr. Plea Hr'g, at 4.  Rios verbally responded that he understood the range of punishments. Dkt. # 8-3, Tr. Plea Hr'g, at 4.  The trial court also asked Rios if he understood that, by entering a plea, he was "giving up [his] right to have a jury trial and all these rights that go along with that," and Rios verbalized that he understood the same.  Dkt. # 8-3, Tr. Plea Hr'g, at 4-5.  The following exchange then occurred between the trial court and Rios:

---

[1]     For consistency, the Court's citations refer to the CM/ECF header pagination.

| | |
|---|---|
| The Court: | So you're entering what is known as a blind plea, Mr. Rios, leaving it to the Court.  And we'll have argument, both the State will argue about what they're recommending and then your attorney will argue.  And then we'll have a presentence investigation and they're going to send out a background check and make a recommendation. |
| | Do you understand that. |
| Mr. Rios: | Yes, Your Honor. |
| The Court: | And your pleas are guilty on these cases. |
| Mr. Rios: | Yes. |
| The Court: | So you wish to plead guilty today, Mr. Rios. |
| Mr. Rios: | Okay.  I kind of understand this, yes. |
| The Court: | Well, it's up to you.  You're -- do you want to plead guilty -- |
| Mr. Rios: | Yes, Your Honor. |
| The Court: | -- or not. |
| Mr. Rios: | Yes, Your Honor. |
| The Court: | And if you want to enter a plea of guilty, like I said we're going to pass sentencing. |
| | This says on May 28, 2015, while in Nowata County, you shot a firearm at police officers with intent to kill, used a vehicle to discharge a weapon, possessed a firearm during the commission of a felony, and caused great bodily harm while eluding a police officer.  So he's felony eluding I guess.  And there was I believe two other people with you. |
| | Is that correct. |
| Mr. Rios: | Yes, Your Honor. |
| The Court: | And so -- |
| [Prosecutor]: | And if I might, Judge.  He is charged acting in concert in all counts. |

3

| The Court: | Okay. So you understand that you're pleading guilty to all the counts which the State has filed against you, Mr. Rios. |
| Mr. Rios: | Yes, Your Honor. |
| The Court: | Are you pleading guilty of your own free will. |
| Mr. Rios: | Yes, Your Honor. |

Dkt. # 8-3, Tr. Plea Hr'g, at 5-7.  The trial court also asked plea counsel whether he had "gone over the [plea] paperwork with [Rios]," and whether, in plea counsel's view, Rios "understands what he's doing today," was able to assist with trial preparation, and made a voluntary decision to waive the jury trial and enter the plea.  Dkt. # 8-3, Tr. Plea Hr'g, at 7.  Plea counsel responded, "Yes, Your Honor.  He talked with me and his family as well."  Dkt. # 8-3, Tr. Plea Hr'g, at 7.  Finally, before discussing scheduling issues related to the sentencing hearing, the trial court stated, without objection, "And so, Mr. Rios, I'll show that you were sworn and responded to questions under oath; you understand the nature, purpose, and consequence; your pleas of guilty are accepted; they're knowingly and voluntarily entered; you are competent; there's a factual basis; there's no priors."  Dkt. # 8-3, Tr. Plea Hr'g, at 8.  At the conclusion of the hearing, the trial court asked Rios if he had "any questions," and Rios responded that he did not.  Dkt. # 8-3, Tr. Plea H'rg, at 9-10.

The trial court held a sentencing hearing on January 20, 2017.  Dkt. # 8-4, Tr. Sentencing Hr'g, at 1.  After hearing testimony from one victim, Rios's younger sister, and Rios, and reviewing the presentence investigation report, the trial court imposed four life sentences (counts one, two, three and four), a 10-year prison sentence (count five), and a five-year prison sentence (count six), with the latter two sentences suspended.  Dkt. # 8-4, Tr. Sentencing Hr'g, at 2, 30-31; Dkt. # 8-1, O.R. vol. 1, at 160.  The trial court ordered that the four life sentences be served concurrently with each other and that the two suspended sentences be served concurrently with each other but

4

consecutively to the life sentences.  Dkt. # 8-3, Tr. Sentencing Hr'g, at 30-31; Dkt. # 8-1, O.R. vol. 1, at 160.  The trial court advised Rios of his appeal rights and the process for taking an appeal following entry of a guilty plea.  Dkt. # 8-3, Tr. Sentencing Hr'g, at 32-33.

**B.    Motion to withdraw plea**

Represented by plea counsel, Rios timely moved to withdraw his plea on January 26, 2017, alleging that his plea was not knowing and voluntary.  Dkt. # 8-1, O.R. vol. 1, at 164-65.  The trial court appointed Georgia Manley ("plea withdrawal counsel") to represent Rios and held a hearing on the motion on February 24, 2017.  Dkt. # 8-1, O.R. vol. 1, at 198; Dkt. # 8-2, O.R. vol. 2, at 1; Dkt. # 8-5, Tr. Mot. Hr'g, at 4.

At the hearing, plea withdrawal counsel called Rios as a witness.  Dkt. # 8-5, Tr. Mot. Hr'g, at 5.  Rios testified that, on the date he entered his guilty plea, he understood the charges against him.  Dkt. # 8-5, Tr. Mot. Hr'g, at 5.  When asked about the basis for his motion to withdraw the plea, Rios stated, "I was not understanding what my attorney was telling me.  He was just -- I was just going off of what he was saying and what he would tell me to do."  Dkt. # 8-5, Tr. Mot. Hr'g, at 6. Rios further testified that he met with plea counsel "like three times only," and that plea counsel "really wasn't explaining things."  Dkt. # 8-5, Tr. Mot. Hr'g, at 6.  Rios testified that he did not understand "what a guilty plea is" and explained he specifically did not understand, "If I wanted to plead guilty to the things or like -- I can't remember if it is no contest or not guilty.  I wasn't -- I was nervous and I just didn't understand.  Too much things going on in my head and I wasn't paying attention."  Dkt. # 8-5, Tr. Mot. Hr'g, at 6.  Rios testified that he did review the plea paperwork with plea counsel and that he felt that he had the opportunity to ask questions about things he did not understand.  Dkt. # 8-5, Tr. Mot. Hr'g, at 6.  He further testified that he did not understand the

5

phrase "blind plea" because "it was [his] first time going through [the legal] process" and his first time in court on charges more serious than traffic tickets.  Dkt. # 8-5, Tr. Mot. Hr'g, at 7.  Rios testified that when he entered his guilty plea, he understood that he had the right to a jury trial but that he was not "able to discuss [his] trial rights and things with" plea counsel.  Dkt. # 8-5, Tr. Mot. Hr'g, at 7-8.  When asked why he decided to plead guilty, Rios testified:

> Because my attorney had told me that I had nothing else to do but to just take that. He just said take that and I was like, well, can you explain what things are going on and he just basically  - - sorry about my language, but [plea counsel stated] you are basically fucked.

Dkt. # 8-5, Tr. Mot. Hr'g, at 8.

On cross-examination, Rios testified that he was born and raised in the United States and understood English well enough to communicate with plea counsel but that he did not understand some legal phrases that plea counsel used.  Dkt. # 8-5, Tr. Mot. Hr'g, at 9.  Rios reiterated that he did not "understand what a blind plea is or what a jury is or stuff like that" and that he was "not paying attention" during his court hearings because he was nervous.  Dkt. # 8-5, Tr. Mot. Hr'g, at 10.  In response to several questions about his testimony at the sentencing hearing, Rios testified, in summary, that he did not believe he deserved a harsh sentence because his crimes resulted from his "drug problem," that he thought the sentencing judge would give him a "second chance" and possibly a 20-year prison sentence, and that he "wasn't expecting a life sentence."  Dkt. # 8-5, Tr. Mot. Hr'g, at 11-12.  Rios also testified that he understood that the potential sentencing range was "as little as zero and as long as life."  Dkt. # 8-5, Tr. Mot. Hr'g, at 12.   In addition, Rios testified that he was "upset" when the sentencing judge imposed a life sentence.  Dkt. # 8-5, Tr. Mot. Hr'g, at 12-13.

Citing the procedural history of the case, the presentence investigation report, and the transcripts of the plea and sentencing hearings and the trial court's own recall of those proceedings, and Rios's post-plea testimony, the trial court concluded that Rios's plea was knowing and voluntary and denied the motion. Dkt. # 8-5, Tr. Mot. Hr'g, at 16-18. The trial court then advised Rios of his appeal rights. Dkt. # 8-5, Tr. Mot. Hr'g, at 18-19.

### C.    Certiorari appeal

Represented by Jeremy Stillwell ("appellate counsel"), Rios timely filed a petition for writ of certiorari, challenging the denial of his motion to withdraw the plea. Dkt. # 8-2, O.R. vol. 2, at 3; Dkt. # 7-5, at 1-2. Rios raised two propositions in his appellate brief. First, Rios argued that his guilty plea was not knowing and voluntary because his testimony at the hearing on the motion to withdraw the plea demonstrated that he did not understand the plea process or the consequences of entering a blind plea. Dkt. # 15, Reply Br., at 35-36. Second, he argued that he received ineffective assistance of counsel because plea withdrawal counsel failed to argue that his conviction of possessing a firearm during the commission of a felony violated the double punishment provisions of the Fifth Amendment and OKLA. STAT. tit. 21, § 11. Dkt. # 15, Reply Br., at 37, 41-42; see also, Br. of Pet'r, Rios v. State, OCCA Case No. C-2017-230, available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=C-2017-230&cmid=121066, last visited Jan. 28, 2022.[2] In an unpublished summary opinion filed February 1, 2018, in Case No. C-2017-230, the Oklahoma Court of Criminal Appeals ("OCCA") rejected each

---

[2]    The Court takes judicial notice of the appellate brief filed in the OCCA, available to the public online through the Oklahoma State Courts Network, because neither party provided a complete copy of that brief. See Johnson v. Spencer, 950 F.3d 680, 705-06 (10th Cir. 2020) (discussing federal courts' discretion to take judicial notice of public records, including records of state court proceedings).

proposition on the merits, denied Rios's petition for certiorari, and affirmed his judgment and sentence.  Dkt. # 1, Pet., at 14-19.

## II.    Analysis

Proceeding pro se, Rios filed the instant petition for wit of habeas corpus (Dkt. # 1) on February 4, 2019.  As he did in his certiorari appeal, Rios claims his guilty plea was not knowing and voluntary (claim one) and that plea withdrawal counsel performed deficiently and prejudicially by failing to raise a double-jeopardy claim in support of his motion to withdraw the plea (claim two). Dkt. # 1, Pet., at 4-9.  Respondent Jimmy Martin filed a response (Dkt. # 7) in opposition to the petition, and Rios filed a reply brief (Dkt. # 15).  Both parties provided records of state court proceedings (Dkt. ## 1, 7, 8, 15) that are necessary to adjudicate Rios's claims.

Because the OCCA rejected both of Rios's claims on the merits, this Court may not grant habeas relief on those claims unless Rios first demonstrates that the OCCA's adjudication of those claims "resulted in a decision that is contrary to, or involves an unreasonable application of clearly established Federal law," 28 U.S.C. § 2254(d)(1),[3] or "resulted in a decision . . . that is based on an unreasonable determination of the facts based on the evidence presented in State court proceedings," 28 U.S.C. § 2254(d)(2).

Habeas review under § 2254(d)(1) focuses on whether and how the state court applied clearly established federal law in reaching its decision on a federal claim.  "A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it 'applies a rule that

---

[3]    As used in § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" Smith v. Duckworth, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting Ryder ex rel. Ryder v. Warrior, 810 F.3d 724, 739 (10th Cir. 2016)).  A state-court decision involves an unreasonable application of clearly established federal law "if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'"  Fairchild v. Trammell, 784 F.3d 702, 711 (10th Cir. 2015) (quoting Williams, 529 U.S. at 407-08).

Habeas review under § 2254(d)(2) focuses on the factual underpinnings of the state court's decision on the federal claim or claims.  A state court's decision may be based on an unreasonable determination of the facts if the state court "plainly and materially misstated the record" or if "reasonable minds could not disagree that the [factual] finding was in error."  Smith, 824 F.3d at 1250.  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).

Section 2254(d)'s standards are "highly deferential" and require a federal court to give the state court's decision the "benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  The federal court also must presume the correctness of the state court's factual findings unless the prisoner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Section 2254(d) thus "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013).

9

Considering Rios's claims under this framework, the Court finds and concludes that Rios cannot overcome that barrier as to either of his claims.

### A.      Validity of guilty plea

Rios first claims that he is in custody in violation of his Fourteenth Amendment right to due process because his convictions rest on a guilty plea that was not knowing and voluntary.   In rejecting this claim, the OCCA reasoned:

> A valid plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  From our review of the trial court's colloquy, the plea of guilty summary of facts, and the evidentiary hearing testimony, we conclude that [Rios] knowingly, voluntarily, and intelligently entered pleas of guilty to all counts charged.

> [Rios] was fully advised of the rights he was abandoning and the ranges of punishment.  There was no evidence that he was not competent to enter his pleas. He testified that he believed that he might get, at most, around twenty (20) years.  He was, however, clearly unsatisfied that he received life sentences. [Rios] did not show that he received anything but sound advice from his attorney.  Proposition one is hereby denied.

Dkt. # 1, Pet., at 15-16.

Rios does not suggest, nor could he show, that the OCCA's decision is contrary to clearly established federal law.  As the OCCA acknowledged, under clearly established federal law, a plea must be knowing, voluntary and intelligent.  Brady v. United States, 397 U.S. 742, 747-78 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969); see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970))).  At a minimum, for a plea to be knowing and intelligent, the defendant must understand the nature of the charges against him, the possible penalties, and the fact that he is waiving several

constitutional rights by entering a plea.  Brady, 397 U.S. at 756-57; Boykin, 395 U.S. at 242-44.  A defendant's decision to enter a plea must also be voluntary; thus, a plea is constitutionally infirm if it is the product of coercion.  Euziere v. United States, 249 F.2d 293, 295 (10th Cir. 1957).  The OCCA's decision reflects that it identified and applied these controlling legal principles in evaluating the validity of Rios's plea.

Liberally construing the petition, Rios appears to argue that the OCCA unreasonably applied these controlling legal principles to the facts of his case "[b]ecause the record shows [his] plea was not voluntary and knowingly entered."  Dkt. # 1, Pet., at 5.  Specifically, Rios emphasizes his withdrawal hearing testimony that plea counsel only visited him three times, failed to fully explain "things," and essentially told him he had no choice but to take the plea.  Dkt. # 1, Pet., at 5.  Rios also asserts that plea counsel "did not explain the full consequences of the plea before entering the plea of guilty to such severe punishment(s) in accordance with Boykin v. Alabama," and, specifically, "failed to inform him of the full ramifications of his sentence, and the range of punishment before entering him into a guilty plea."  Dkt. # 1, Pet., at 7.[4]  Rios's argument that the OCCA's decision is objectively unreasonable fails because it rests on a highly selective view of the record.  The OCCA, however, considered the record as a whole when it determined that Rios's plea was knowing and voluntary.  And, in doing so, the OCCA reasonably applied Supreme Court precedent and reasonably determined the facts.  Significantly, though they are not conclusive on the question of whether a plea satisfies due process, a defendant's in-court statements made under oath during the plea hearing as to the knowing and voluntary nature of his plea are accorded a strong

---

[4]     Rios makes these assertions in his argument as to claim two but, as further discussed below, see infra n.6, the Court construes them as part of his claim one argument.

11

presumption of reliability.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Courts also may

consider answers a defendant has provided on written forms relevant to the plea.  Hoffman v.

Young, 23 F. App'x 885, 887 (10th Cir. 2001) (unpublished)[5] (citing Moore v. Anderson, 474 F.2d

1118, 1119 (10th Cir. 1973)).  Here, the record demonstrates that Rios made verbal and written

statements when entering his plea and provided testimony during the withdrawal hearing indicating

that he understood the charges against him, understood the range of punishments for those charges,

and made a voluntary decision, after consultation with plea counsel, to plead guilty.  See supra

sections I.A, I.B.  The trial court considered Rios's in-court statements during the plea hearing and

his statements on the written plea form, when the court accepted his plea and when the court

(presided over by the same judge who accepted the plea) denied his motion to withdraw the plea.

See supra section I.B.  In denying the motion to withdraw the plea, the trial court determined that,

despite Rios's withdrawal hearing testimony that he did not understand "things" related to his plea

proceedings, the record as a whole supported that Rios was competent to enter the plea, and that his

plea was knowing and voluntary.  Dkt. # 8-5, Tr. Mot. Hr'g., at 16-18.  More importantly, the OCCA

considered these same portions of the record when it affirmed the trial court's decision denying the

motion to withdraw the plea and in denied his certiorari appeal.  Dkt. # 1, Pet., at 15-19.

Based on the foregoing, the Court finds and concludes that the OCCA's adjudication of

Rios's due-process claim did not result in a decision that is contrary to clearly established federal

law, that involved an unreasonable application of clearly established federal law, or that is based on

---

[5]     The Court cites this unpublished opinion for its persuasive value.  See Fed. R. App. P.
32.1(a); 10th Cir. R. 32.1(A).

an unreasonable determination of the facts.  As a result, § 2254(d) bars relief and the Court denies the petition as to claim one.

### B.      Ineffective assistance of plea withdrawal counsel

In his second claim, Rios alleges that he was denied his Sixth Amendment right to the effective assistance of counsel during the withdrawal hearing.  He presents here the same claim he presented to the OCCA, namely, that plea withdrawal counsel performed deficiently and prejudicially by failing to argue that he was punished twice for the same offense, in violation of the Fifth Amendment and Okla. Stat. tit. 21, § 11.  Dkt. # 1, Pet., at 7-8.[6]

The OCCA evaluated this claim by assessing the merits of the underlying double-jeopardy/double-punishment claim.  Before evaluating the underlying claim, the OCCA stated,

> To prevail, [Rios] must show that counsel's conduct was "outside the wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S.

---

[6]      At the beginning and end of his argument as to claim two, Rios asserts that plea counsel "was acting below the Sixth Amendment standard under the United States Constitution, when he failed to inform his client of the full ramifications of his sentence, and the range of punishment before entering him into a guilty plea" and suggests that plea counsel's failures made his plea not knowing and not voluntary.  Dkt. # 1, Pet., at 7-8.  This claim is different than the one he presented in his certiorari appeal.  Applying the rule of liberal construction, the Court reads this portion of his claim two argument as part of Rios's argument in support of claim one, not as an attempt to assert an ineffective-assistance-of-plea-counsel claim that Rios failed to fairly present to the OCCA, as required by 28 U.S.C. § 2254(b)(1)(A).  However, to the extent this portion of claim two reasonably could be construed as asserting a separate Sixth Amendment claim based on plea counsel's allegedly deficient and prejudicial performance during plea negotiations and the plea hearing, the Court would reject that claim on the merits, as permitted by 28 U.S.C. § 2254(b)(2), despite the failure to exhaust available state remedies.  Critically, in rejecting Rios's challenge to the validity of his guilty plea, the OCCA determined that Rios "was fully advised of the rights he was abandoning and the ranges of punishment" and that Rios failed to "show that he received anything but sound advice from his attorney."  Dkt. # 1, Pet., at 16.  These findings are presumed correct under 28 U.S.C. § 2254(e)(1) and, in any event, the record supports them.  Thus, to the extent Rios alleges that plea counsel's deficient performance resulted in a Sixth Amendment violation, there is no factual support for that claim.

668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). [Rios] must also show that he was prejudiced by showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Dkt. # 1, Pet., at 16-17. Applying these principles, the OCCA found that Rios failed to establish deficient performance or prejudice because the underlying claim lacked merit. The OCCA explained that Rios's argument rested on his contention "that his convictions for possession of a firearm while committing a felony and shooting with intent to kill amount to a violation of the constitutional prohibition against double jeopardy." Dkt. #1, Pet., at 17. The OCCA rejected that contention, reasoning,

> [Rios's] brief leads one to believe that only one firearm was involved in this crime; however, the Information reveals that [Rios] possessed one firearm while shooting another. He was charged with possessing a pistol while committing the felony crime of shooting with intent to kill in one count and shooting a rifle with intent to kill in three other counts. Clearly, no double jeopardy violation occurred in this case. Moreover, [Rios] completely ignores the fact that a double jeopardy claim may be waived by the knowing and voluntary entry of a guilty plea. Weeks v. State, 2015 OK CR 16, ¶ 9, 362 P.3d 650, 653, citing United States v. Broce, 488 U.S. 563, 572, 109 S. Ct. 757, 764, 102 L. Ed. 2d 927 (1989).

> Taking [Rios's] double jeopardy argument at face value, this Court examines the elements of the offenses to determine whether each offense required proof of at least one element that the other does not. Davis v. State, 1999 OK CR 48, ¶ 4, 993 P.2d 124, 125. ("whether each provision requires proof of an additional fact which the other does not." quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)."). [Rios] concedes the fact that the elements are different, but argues that is impossible to commit one offense without committing the other, and lastly he argues the two convictions violate 21 O.S. 2011, § 11.

> [Rios's] argument completely ignores a part of the proper section 11 analysis which looks to the intent of the legislature. Sanders v. State, 2015 OK CR 11, ¶¶ 6 & 8, 358 P.3d 280, 283-84. Here, the legislature has specifically stated that possessing a firearm during the commission of a felony shall be a separate offense from the underlying felony. 21 O.S. Supp. 2012, § 1287. The legislature has, thus, foreclosed his double punishment claim.

As [Rios] cannot demonstrate a basis for his underlying claim, he fails to show that counsel's conduct fell below the wide range of professionally competent assistance or that the conduct prejudiced him in any way. Proposition two is denied.

Dkt. # 1, Pet., at 17-18.

As to this claim, Rios does not even attempt to show, much less demonstrate, that he can overcome § 2254(d)'s "formidable barrier" to federal habeas relief. Even if he had attempted to do so, he would fail. First, regardless of whether plea withdrawal counsel is more akin to plea counsel or appellate counsel, the OCCA clearly and correctly identified Strickland as the Supreme Court precedent governing his Sixth Amendment claim. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (noting that Strickland governs claims of ineffective assistance of counsel and provides the "proper standard for evaluating" a claim that appellate counsel was ineffective).

Second, the OCCA reasonably applied Strickland to the particular facts of his case by considering the merits of the underlying double-jeopardy claim. Cf. Cargle v. Mullin, 317 F.3d 1196, 1205 (10th Cir. 2003) ("[I]neffective appellate assistance can be established on the basis of the demonstrable merit of the issue omitted by counsel on the petitioner's direct appeal.").

Third, the OCCA reasonably determined the facts regarding the merits of his Sixth Amendment claim and the underlying claim. Plea withdrawal counsel did not assert a double-jeopardy/double-punishment claim and, as the OCCA found, the facts show that plea withdrawal counsel had more than one good reason to omit that claim. For example, as the OCCA noted, a guilty plea generally forecloses a double-jeopardy claim unless that claim is "evident from the face of the indictment." United States v. De Vaughn, 694 F.3d 1141, 1145-46 (10th Cir. 2012). And, as the OCCA found, the state alleged in the second amended information that Rios used a .223 caliber Smith and Wesson AR-15 to commit counts one through four and that Rios committed count

15

five, the possession of a firearm during the commission of a felony charge, by possessing a .9 mm Glock pistol.  Dkt. # 8-1, O.R. vol. 1, at 47-48.  Given that two separate firearms were referenced in the charging document for two separate offenses, it was not evident from the face of that document that Rios had a double-jeopardy claim that was not foreclosed by his guilty plea.  Further, as the OCCA reasoned, even if the facts would have supported a claim that was not foreclosed by the guilty plea, Rios conceded in his appellate argument that the two offenses at issue involved different elements.  Under <u>Blockburger</u>, this concession was fatal to his claim.  <u>See</u> <u>United States v. Mier-Garces</u>, 967 F.3d 1003, 1012 ("In other words, <u>Blockburger</u>'s so-called 'same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.'" quoting <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993))).  Because Rios's underlying claim lacked merit, it was objectively reasonable, as a matter of fact and a matter of law, for the OCCA to conclude that plea withdrawal counsel did not perform deficiently or prejudicially by failing to advance that claim during the withdrawal hearing.  <u>See</u> <u>Robbins</u>, 528 U.S. at 288 (noting that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success").

For these reasons, the Court agrees with Martin that § 2254(d) bars relief and thus denies the petition as to claim two.

## III.    Conclusion

Because the foregoing analysis demonstrates that Rios is not entitled to federal habeas relief, the Court denies the petition for writ of habeas corpus.  In addition, because reasonable jurists would not debate this Court's assessment of the constitutional claims raised in the petition, the Court

declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 273, 284 (2000).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.     The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.     A certificate of appealability is **denied**.

3.     A separate judgment shall be entered in this matter.

**DATED** this 31st day of January, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE